**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Axon Enterprise Incorporated,

Plaintiff,

v.

Venjuris PC,

Defendant.

No. MC-22-00040-PHX-GMS

**ORDER**

Before the Court is Axon Enterprise Inc.'s Motion to Transfer Axon's Motion to Compel to the United States District Court for the Middle District of Florida (Doc. 5) and Motion to Compel Venjuris, P.C.'s Production of Documents (Doc. 1). For the reasons below, the Court grants the Motion to Transfer and declines to rule on the Motion to Compel.

**BACKGROUND**

Axon Enterprise Inc. ("Axon") filed this miscellaneous case to compel law firm Venjuris to produce documents responsive to a subpoena. The subpoena was issued by the United States District Court for the Middle District of Florida ("MDFL") in *Tazer v. Phazzer*, Case No. 6:16-cv-0366-PGB-LHP. That case began in March 2016, when Axon sued Phazzer Electronics, Inc. ("Phazzer") for trademark infringement, patent infringement, false advertising, and unfair competition. (Doc. 1 at 2.) In July 2017, the MDFL issued a default judgment for Axon for $7.8 million and entered a permanent

injunction against Phazzer entities challenging Axon's registered trademarks. As Axon attempts to collect on the judgment, it alleges that Phazzer and its agents, including Venjuris attorney, Anthony David Logan ("Logan"), have engaged in bad faith obstruction efforts such as fraudulent transfers and violations of the permanent injunction. In August 2020, Phazzer impleaded Steven Abboud ("Abboud") personally in the Florida action on alter ego grounds. Venjuris itself previously represented Phazzer IP, but never filed a notice of appearance in the underlying litigation. Axon alleges that Logan "worked behind the scenes for years with Abboud and his various entities to, among other things, draft numerous 'pro per' filings, thwart Axon's collection efforts, and defy MDFL's injunction." (Doc. 5 at 4.) Currently, Axon's motion for order to show cause why Logan, among others, should not be held in contempt for violations of the court's permanent injunction is pending in the MDFL.

On August 10, 2020, the MDFL granted Axon's motion for leave to file a Supplemental Complaint. Axon alleges that it has faced numerous discovery difficulties since then, and the discovery deadline in that case is December 15, 2022. (Doc. 12 at 3 n.1.) In August 2022, Axon served Venjuris with a subpoena requesting numerous corporate records associated with Venjuris's representation of any entity owned or controlled by Abboud. (Doc. 1-1.) It also requests various financial information evidencing Venjuris attorneys' ownership of or financial interests in any Phazzer entities. (Doc. 1-1 at 5-6.)

After receiving the subpoena, Venjuris sent an objection letter to Axon raising relevancy, overbreadth, privilege, and confidentiality under Ethical Rule 1.6. (Doc. 8 at 2.) Axon responded, providing Venjuris with Judge Hoffman's order defining the scope of discovery in the underlying Florida case, her order on privilege logs, and clarifying the scope of two requests. (Doc. 12 at 4.) Shortly after, Axon's counsel allegedly spoke with Venjuris's retained counsel, Chris LaVoy, and Venjuris counsel Brian Booker, on multiple occasions to establish an approach and timeline for Venjuris to comply with the subpoena. (Doc. 12 at 5-6.) Axon alleges that although Venjuris never questioned the relevancy of

the requested documents and appeared committed to complying with the subpoena, it was not able to provide the basic information necessary to formulate an ESI protocol. (Doc. 12 at 6.) As a result, on September 14, 2022, Axon filed the instant Motion to Compel. On September 19, 2022, Axon filed the instant Motion to Transfer, asserting that there are exceptional circumstances warranting a transfer of the Motion to Compel.

## DISCUSSION

### I. Legal Standard

Under Federal Rule of Civil Procedure 45, subpoena-related motions must be filed in the district where compliance is required. However, a Court may transfer a subpoena-related motion to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). To determine whether exceptional circumstances exist, the Court considers several factors related to consistency and judicial economy. These factors include the "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). Additionally, the Court considers "whether requiring the local nonparty to litigate subpoena-related motions in the issuing court would present an undue burden or cost." *Id.* The Advisory Committee notes emphasize that "[t]he prime concern should be avoiding burdens on local nonparties," and "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.*

### II. Analysis

In this case, the relevant factors favor granting a transfer because "the interests in having the issuing court decide the discovery dispute 'outweigh the interests of the party served with the subpoena in obtaining local resolution of the motion.'" Fed. R. Civ. P. 45(f); *In re Cobb*, No. A-20-MC-595-RP, 2020 WL 4043752, at *2 (W.D. Tex. July 16, 2020).

#### A. Consistency

The "potential for inconsistent rulings should be avoided and weighs in favor of a

single judicial officer deciding all of [the] disputes." *Venus Med. Inc. v. Skin Cancer & Cosm. Dermatology Crt. PC*, No. 15-00062MC, 2016 WL 159952, at *3 (D. Ariz. Jan. 14, 2016) (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014)). Although a subpoena-related motion is ordinarily resolved in the court where compliance is required, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45(f) advisory committee's note (2013). One way the issuing court's management may be disrupted is when "the issuing court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f) advisory committee's note (2013).

The MDFL has previously addressed issues relevant to the subpoena in this case. Nevertheless, Venjuris alleges that the "crux of the dispute . . . is one of attorney-client privilege and confidentiality," and previous MDFL rulings do not implicate the "unremarkable" privilege issues that arise in Axon's motion to compel. (Doc. 9 at 4.) However, the MDFL has already ruled that certain privilege objections were waived. Specifically, the MDFL held that Abboud waived attorney-client privilege objections by untimely objecting to a subpoena on Phazzer's IT specialist that would produce communications between Abboud and his attorneys. (Doc. 5 at 6-7.) Thus, the MDFL "is in a much better position to determine which documents have already been produced," and no longer comprise privileged communications. *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014).

Additionally, attorney-client privilege is not the only area in which the Court risks issuing an inconsistent ruling. Venjuris itself has also broadened the scope of the issues presented by requesting that the Court quash the subpoena as irrelevant and overbroad. (Doc. 8 at 1.) In the underlying case, however, Judge Hoffman has already addressed relevance objections by Phazzer IP to a similar subpoena. (Doc. 12 at 4) (citing Judge Hoffman's order stating that information such as Phazzer's "ownership, management, property, rights, finances, contracts, and relationships is necessary and relevant to Taser's ability" to establish its claims. Doc. 12-2 at 4). Thus, this Court runs the risk of

contradicting or circumventing Judge Hoffman's previous orders regarding privilege, relevance, or overbreadth because it is less familiar with the extensive discovery in this case. Such a risk should be avoided if it can be done with minimal burden to the local nonparty. *Venus Med. Inc.*, 2016 WL 159952, at *3.

Thus, the fact that MDFL has already found the attorney client-privilege waived in some circumstances and addressed the relevance and breadth of similar subpoenas in this action—arguments that Venjuris clearly seeks to raise—poses a risk of inconsistent rulings. Because "[u]niformity of discovery rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties," this factor weighs in favor of a transfer. *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, No. 1:17-MC-0055, 2017 WL 1611915, at *2 (W.D. Tex. Apr. 27, 2017).

**B. Judicial Economy**

Additionally, transferring the motion to the Middle District of Florida is in the interests of judicial economy. The underlying case has been before the MDFL for over six years. (Doc. 5 at 1.) Additionally, the MDFL has issued dozens of rulings on motions in this case and related litigation, including discovery disputes, scheduling matters, appeals, bankruptcy filings, and criminal proceedings. (Doc. 5 at 2); *see Venus Med. Inc.*, 2016 WL 159952, at *3 (transferring a subpoena-related motion when the underlying action was over three years old); *Jud. Watch, Inc.*, 307 F.R.D. at 35 (transferring a subpoena-related motion when the underlying case was four years old and had "innumerable discovery disputes"). Considering there are over 500 docket entries in the underlying case, the MDFL is far "more familiar with the issues remaining in the case, the history of discovery, [and] the relevance of the documents sought" in the instant motion. (Doc. 5-2); *Venus Med. Inc.*, 2016 WL 159952, at *3. Accordingly, this factor weighs in favor of a transfer.

**C. Local Nonparty's Interests**

Second, Venjuris will not be unduly burdened by a transfer. The Advisory Committee notes emphasize "that the primary focus in determining whether a transfer is appropriate should be the burden on local nonparties." *Moon Mountain Farms*, 301 F.R.D.

at 430. A party may not, however, rely on "the cost of litigation alone" to show undue burden because otherwise "[a]lmost any subpoenaed party could make the same undue burden argument[]." *Id.* In the event of a transfer, Venjuris may be burdened by the fact that none of its attorneys are licensed to practice in Florida. It is not an undue burden, however, for two reasons. First, it appears likely that Venjuris will need to obtain Florida counsel to oversee the document review process anyway. (Doc. 8-2 ¶ 9.) Arizona counsel initially retained by Venjuris stated that for the firm's professional liability carrier to fund the document review expense, "Florida counsel for Mr. Logan needs to oversee the process." (*Id.*) Additionally, Venjuris "does not explain why its [Arizona-based] attorneys could not represent [it] *pro hac vice* pursuant to . . . the Local Rules for the Middle District of Florida." *In re Cobb*, 2020 WL 4043752, at *2. Thus, although Venjuris itself does not have any Florida-licensed attorneys, it will suffer, at most, a minor inconvenience in obtaining such counsel or taking the necessary steps to represent itself in a Florida court.

Next, the fact that Venjuris's equipment and documents are located in Arizona is not persuasive. "Transferring a *motion* to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions does not rise to the level of unfair prejudice." *Wultz*, 304 F.R.D. at 45. To further ease the burden of a transfer, "the Advisory Committee encourages judges to 'permit telecommunications' to minimize travel costs after a Rule 45(f) transfer." *Moon Mountain Farms*, 301 F.R.D. at 430. In light of the ability to communicate virtually and the fact that "electronic filing of documents has been the norm in federal court for more than a decade," it does not appear that a transfer to the MDFL would significantly burden Venjuris by virtue of its documents and equipment being in Arizona. *In re Cobb*, 2020 WL 4043752, at *2.

Finally, Venjuris has not shown that there is a conflict between Arizona's and Florida's privilege laws and ethics rules. Though Venjuris asserts that Arizona privilege laws must apply, the only authority it relies on does not stand for such a proposition. *Moon Mountain Farms*, 301 F.R.D. at 430. In fact, *Moon Mountain* states that when determining which state's attorney-client privilege laws apply in the event of a transfer, the Court should

start with the *issuing* court's choice of law rules. *Id.* at 430 n.4. More importantly, the court emphasized that when there is "no mention whatsoever" of the issuing court's privilege laws or the "states' laws in this area are virtually identical," the application of one state's law over that of another cannot burden the local nonparty. *Id.* at 430-31. Here, Venjuris does not indicate what differences, if any, exist between Arizona's privilege laws and Florida's privilege laws. If there was a conflict, the Florida court could determine "whether 'some special reason' exists not to give effect to" its privilege law." *Id.* at 430 n.4 (citing Restatement (Second) Conflict of Laws § 139).[1] A hypothetical conflict of laws, without more, does not pose an undue burden on Venjuris or overcome the interests that favor a transfer.

**CONCLUSION**

Because there are significant concerns about inconsistent rulings and judicial economy, and those concerns outweigh the likely prejudice to Venjuris as a result of a transfer, the motion to compel is transferred to the Middle District of Florida. As such, the Court does not address the merits of the Motion to Compel.

Accordingly,

**IT IS HEREBY ORDERED** that Axon's Motion to Transfer (Doc. 5) is **GRANTED.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to **TRANSFER** this matter to the United States District Court for the Middle District of Florida.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action.

Dated this 27th day of October, 2022.

G. Murray Snow
Chief United States District Judge

[1] Here, as in *Moon Mountain*, both relevant states follow the Second Restatement of Conflicts. *Swanson v. Imagie Bank, Inc.*, 77 P.3d 439 (Ariz. 2003) (illustrating Arizona's application of the Second Restatement); *Anas v. Blecker*, 141 F.R.D. 530 (M.D. Fla. 1992) (illustrating Florida's application of the second restatement).